HENRY M. SIMONEAU *vs.* CHARLES E. LANDRY & others.

Worcester.   September 26, 1922. — October 10, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Trademark.*

A baker doing business in Worcester cannot maintain a suit in equity against a baker in Lowell and a baker in Marlborough to enjoin them from using a trademark, which the plaintiff first began to use in October, 1917, where it appears that the trademark had been used in Massachusetts, Maine, New Hampshire and Rhode Island beginning in February, 1914, and during the years 1914–1917, that in 1914 the plaintiff knew of its use by a baker in Webster, that the defendant in Lowell began using it in November, 1917, and the defendant in Marlborough in April, 1921, and that there was no fraudulent purpose on the part of the defendants in its use.

BILL IN EQUITY, filed in the Superior Court on December 3, 1921, to enjoin the use by the defendants of the trademark "Honey Crust," which trademark, the plaintiff alleged, was "his sole property by virtue of prior use, no other person, firm, corporation or association since his adoption of said mark having a right to the use of the same trademark either in the identical form or in any such near resemblance thereto as might be calculated to deceive."

In the Superior Court, the suit was referred to a master. Material findings by the master are described in the opinion. There was no report by him of the evidence before him. The suit was heard upon the pleadings and the master's report by *Sanderson,* J., by whose order a final decree was entered dismissing the bill with costs. The plaintiff appealed.

*W. E. Baff,* for the plaintiff.

*J. F. Brannan,* for the defendant Landry.

*A. S. Howard,* for the defendant Guilmette.

BRALEY, J. The plaintiff, a baker doing business in Worcester under the name of the Massachusetts Bread Company, alleges that he developed a superior bread, the standard qualities of which having become recognized and dealt in by the trade or dealers in food supplies and by the public, he adopted an original trademark consisting of the words "Honey Crust" and the name of the company imprinted on the wrappers in capital letters, with an ornamental device, of a beehive and sheaf of wheat, which by virtue of his prior use "no other person, firm, corporation or association since his adoption of said mark have a right to the use of the same trademark either in the identical form or in any such near resemblance thereto as might be calculated to deceive." And that the defendants unlawfully have appropriated to themselves the use of the plaintiff's trademark in connection with their vending of bread by using wrappers of waxed tissue paper on each loaf inscribed with the plaintiff's trademark whereby purchasers and consumers of bread are misled and believe that bread made and sold by the defendants is the bread made by the plaintiff. The bill accordingly asks for injunctive relief and for damages.

It appears from the master's report, the plaintiff's exceptions to which as well as his appeal from the overruling of his motion to recommit and amend the report, not having been argued are to be treated as waived, that, the defendant Archambault having consented to the entry of a final decree for the plaintiff, the hearing proceeded against the defendants Landry, a resident of Lawrence, and Guilmette, a resident of Lowell "solely upon the claim" that the plaintiff "had a right to the technical trade name 'Honey Crust'" which these defendants who made and sold bread had infringed, but as against Guilmette only nominal damages would be claimed. The bill has been dismissed as to them, and the only question on the plaintiff's appeal is whether upon the pleadings and the master's findings the final decree should be reversed.

In *Weener* v. *Brayton,* 152 Mass. 101, Mr. Justice Devens after defining a trademark says, "To the validity of a trademark, so as to entitle any one to a remedy for an invasion thereof,

three things have been held necessary: that he must show that he has adopted some marks or signs not in use by others to distinguish the goods manufactured or sold by him from those of other manufacturers or traders; that these must be applied to some article of traffic; and that such articles must have been placed on the market." The case at bar is not one of alleged illegal competition but of wrongful appropriation of a trademark. A trademark relates chiefly to the article sold. A trade name embraces also the individuality of the maker not only for protection in the sale of his wares but to avoid confusion in the market, and to obtain the benefit of a well established mercantile reputation. *Armington* v. *Palmer*, 21 R. I. 109. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437, 438.

While the mark assumed and used by the plaintiff was applied to an article of trade sold on the market, he is met at the outset by the challenge of the defendants of his right either to priority by adoption or of origin and ownership in the use of the mark in the actual sale of bread. This is a question of fact. *Cohen* v. *Nagle*, 190 Mass. 4. *Weener* v. *Brayton*, 152 Mass. 101. The master on evidence not reported after stating "that the use by the plaintiff of a 'Honey Crust' wrapper began not earlier than October 9, 1917" makes the following findings: "The plaintiff testified that his first use of a 'Honey Crust' wrapper was suggested to him by one Bergeron, at that time and for some years prior thereto and" since that time "in the employ of Petri and Jones Company, Inc., a corporation doing business in Boston as dealers in bakers' machinery and supplies. . . . I find that Bergeron called at the place of business of the plaintiff in Worcester and there suggested to him, in view of the trouble the plaintiff was then having with 'Table Talk' wrappers, the use of 'Honey Crust' wrappers and told him that his company carried on hand for immediate delivery to its customers to meet their wants wrappers with the words 'Honey Crust' thereon; the plaintiff then ordered some of those wrappers and they were shipped. . . . This order was given on October 3, 1917, and . . . these wrappers were shipped from Boston to Worcester to the plaintiff's place of business on October 9, 1917, and . . . were of the kind shown on 'Exhibit 7' hereto annexed. Sometime later, and again at the suggestion of Bergeron, the plaintiff changed

the wrapper to one of the design hereto annexed and marked 'Ex. 2,' adopting a trademark, in this case 'Massachusetts Bread Co.,' at the suggestion of Bergeron; and again later, about March 31, 1919, the wrapper was changed to the design shown upon the wrapper hereto annexed marked 'Ex. 1.' As to each of said exhibits, 2 and 1, . . . the design thereon was prepared and designed by Mr. Petri . . . and . . . was used by him in the printing of wax wrappers for the baker's trade and had been so sold by him to bakers in various parts of New England States for some time prior to the sales thereof to the plaintiff. . . .

"In the year 1913 information came to . . . Petri from . . . Bergeron . . . that a wax wrapper with the words 'Honey Crust' thereon was being used as a wrapper for bread for the retail trade in a small town in Rhode Island. Whether 'Crust' was spelled with a 'C' or 'K' is uncertain. . . . Petri and Jones Company, Inc., thereafter secured for sale to its trade wax paper . . . to wrap loaves of bread upon which . . . there was printed the words 'Honey Crust' and that . . . corporation did thereafter sell such wrappers to its trade, in some cases printing thereon the name of the customer and in some cases not printing . . . any name whatsoever; . . . some time later, wrappers having thereon the design which includes a beehive and a sheaf of wheat were sold by said corporation to its trade. . . . Sales of such wrappers to the trade of said corporation began as early as February, 1914, and continued through the years 1914, 1915, 1916 and 1917; . . . In some cases, the word 'Crust' was spelled with a 'C' and in other cases with a 'K'; . . . Such sales . . . were to bakers doing business in various cities or towns in Maine, New Hampshire, Massachusetts and Rhode Island . . . [who] sold loaves of bread wrapped in said wrappers. Wrappers so sold . . . are shown on the exhibits hereto attached numbered sixteen to twenty-two, both inclusive. The plaintiff testified and I find that he knew of the use of a wax paper wrapper for bread having thereon the words 'Honey Crust' by a baker in Webster, Massachusetts, in the year 1914. I find that the use of wrappers such as are shown by exhibits sixteen to twenty-two, both inclusive, by bakers for the purpose of wrapping and selling bread prior to October, 1917, and has been continuous to the time of the filing of this bill.

"Beginning with the early part of November, 1917, the defendant Guilmette was a baker in Lowell, Massachusetts, and from that time to the present day has been selling bread, wrapped in a wax paper having thereon the words 'Honey Crust.' . . .

"Beginning with April, 1921, the defendant Landry, who was then a baker doing business in Marlboro, Massachusetts, began the sale of bread in Worcester, which . . . was wrapped in a wax paper having thereon the words 'Honey Crust' . . . The loaf which Landry manufactured and wrapped . . . was different in shape than the loaf manufactured by the plaintiff, in that Landry's loaf was what is known as a 'split' loaf, that is to say, the top of the loaf was not smooth and even but was depressed in the centre from end to end.

"There was no evidence before me tending to show any actual fraudulent purpose upon the part of either the defendant Landry, or the defendant Guilmette, to deceive the public into the belief that the bread sold by them was the bread of the plaintiff, and I find that there was not any such fraudulent purpose."

The plaintiff having failed to establish his title, the decree should be affirmed with double costs. *Weener* v. *Brayton, supra. Cohen* v. *Nagle, supra. George G. Fox Co.* v. *Glynn,* 191 Mass. 344, 352. *Grocers Supply Co.* v. *Dupuis,* 219 Mass. 576, 578. *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460, 463, 464. G. L. c. 261, §§ 11, 12.

*Ordered accordingly.*