HELOISE PARKER BROEG *vs.* JOSEPH P. DUCHAINE.

Suffolk.    April 1, 1946. — June 6, 1946.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Trade Mark. Equity Jurisdiction,* Trade mark, Plaintiff's clean hands.

A trade mark can have no existence in gross.

The owner of a trade mark used in connection with his bakery products, who had ceased to manufacture or sell bakery products and had given an exclusive license to another baker to use the trade mark on bakery products sold by the licensee regardless of their source, could not maintain a suit in equity to enjoin continued use of the trade mark by the licensee after expiration of the license.

BILL IN EQUITY, filed in the Superior Court on March 22, 1944.

The case was heard by *Beaudreau,* J.

In this court the case was submitted on briefs.

*M. McConnell,* for the plaintiff.

*T. F. O'Brien,* for the defendant.

SPALDING, J.    The plaintiff in this suit seeks to restrain the defendant from using the name "Mother Parker" as a trade mark in connection with the sale of the products of his bakery; the bill also contains a prayer for damages. From a decree dismissing the bill the plaintiff appeals. The evidence is reported.

The relevant facts are these: The plaintiff began to use the name "Mother Parker"[1] in 1931 in connection with a "biscuit mix" that she manufactured in Brooklyn, New York. In 1933 her business was transferred to Boston where, under the name of "Parker Broeg," she manufactured doughnut, biscuit, and other mixes, and seasoning flavors. In 1934 she opened a bakery in Boston under the name of "Mother Parker's Cupboard," and later opened another bakery under the same name in Beverly. In these

---

[1] In 1936 the plaintiff registered the trade mark "Mother Parker's" in the United States patent office.

stores, which were operated until sometime in 1939, the plaintiff sold "an entire package goods line" including bread, doughnuts, cakes and cookies. In 1935 doughnuts manufactured by the plaintiff were sold under the name of "Mother Parker's" in a concession that she operated in a Boston market. In 1940 the plaintiff and her husband opened a combined experimental laboratory and retail bakery under the name "Mother Parker's Cupboard" in Peterboro, New Hampshire, in which they manufactured a complete line of bakery products until December 10, 1941, when the bakery was destroyed by fire. The plaintiff has not manufactured or sold bakery products since that date.

Since March, 1940, the plaintiff has been participating in a radio advertising program broadcast from a Boston station six days a week in which, under the name "Mother Parker," she discusses food, but this does not relate to any food manufactured or sold by her.

The defendant operates a large bakery in New Bedford and distributes bread and doughnuts in southeastern Massachusetts. He sells bread under various names, one of which is "Mother Parker's Enriched Home Made." During the years, 1940, 1941, 1942 and 1943 he was granted an exclusive license by the plaintiff to use "in its territory now serviced" the trade mark "Mother Parker" on bread that he sold. A similar license was granted with respect to doughnuts for parts of the years 1941 and 1942 and for the year 1943. Both licenses expired on December 31, 1943, and have not been renewed because the parties could not reach an agreement. The defendant, however, has continued to use the name "Mother Parker."

The decree dismissing the bill was right.

Since it does not affect the result, we assume, without deciding, that the plaintiff has a valid trade mark in the name "Mother Parker's" when used in connection with bakery products. The chief function of a trade mark is to identify the origin or ownership of the article to which it is affixed or, at least, to indicate that it emanates from the same, though possibly anonymous, source as other goods that have already given the consumer satisfaction. In

short, it is a badge indicating the genuineness of the product to which it is attached. *Hanover Star Milling Co.* v. *Metcalf*, 240 U. S. 403, 412. *Rogers* v. *Taintor*, 97 Mass. 291, 297. *Regis* v. *H. A. Jaynes & Co.* 185 Mass. 458, 460. Schechter, The Rational Basis of Trademark Protection, 40 Harv. L. Rev. 813, 816. Nims, Law of Unfair Competition & Trade Marks (3d ed.) § 188. See *Shredded Wheat Co.* v. *Humphrey Cornell Co.* 250 Fed. 960, 963 (C. C. A. 2). Consequently a trade mark can have no existence in gross, unconnected with some business with which it is used. *Jackman* v. *Calvert-Distillers Corp. of Massachusetts*, 306 Mass. 423, 426, and cases cited. *Associated Perfumers, Inc.* v. *Andelman*, 316 Mass. 176, 182. *United Drug Co.* v. *Theodore Rectanus Co.* 248 U. S. 90, 97. *American Steel Foundries* v. *Robertson*, 269 U. S. 372, 380. *Ph. Schneider Brewing Co.* v. *Century Distilling Co.* 107 Fed. (2d) 699, 703 (C. C. A. 10). *Smith* v. *Dental Products Co. Inc.* 140 Fed. (2d) 140, 144 (C. C. A. 7). "Fairness to the consuming public requires the rule that a trade mark or trade name cannot be assigned to one who has no connection with . . . [the] business as successor or otherwise" with which it has become associated. *Jackman* v. *Calvert-Distillers Corp. of Massachusetts*, 306 Mass. 423, 426. *A. Bourjois & Co. Inc.* v. *Katzel*, 260 U. S. 689, 692. *Ph. Schneider Brewing Co.* v. *Century Distilling Co.* 107 Fed. (2d) 699, 703 (C. C. A. 10). *Everett O. Fisk & Co. Inc.* v. *Fisk Teachers' Agency, Inc.* 3 Fed. (2d) 7, 8 (C. C. A. 8), and cases cited. One who has developed a trade mark as a guaranty of the quality of his merchandise should not be permitted to license its use apart from his business to those who may sell an inferior product.

The granting of the licenses here was not incidental to the sale of the plaintiff's business or of any merchandise that she manufactured or sold. So far as appears, the defendant was merely given licenses to use the trade mark on bread and doughnuts that he sold regardless of their source. It was not transferred in conjunction with any patented process or secret formula. See *Adam* v. *Folger*, 120 Fed. 260, 264 (C. C. A. 7); *Mulhens & Kropff, Inc.* v. *Ferd. Muelhens, Inc.* 43 Fed. (2d) 937, 939 (C. C. A. 2).

There was nothing in the licensing agreements that required that the bread or doughnuts sold by the defendant conform to any fixed standards. The defendant apparently was at liberty to affix the trade mark to any bread or doughnuts that he chose.

In these circumstances we think the plaintiff is in no position to invoke the aid of a court of equity to prevent the defendant from further using the trade mark. If the plaintiff has a valid trade mark in the name "Mother Parker's," it is because the public had become accustomed to regard the bakery products sold under that name as having been made by her or, at least, as emanating from a single source. When she permitted it to be used by the defendant in the circumstances here disclosed, she was enabling the defendant to palm off his goods as hers, thereby deceiving the public. It has been held, and we think rightly, that where the owner of a trade mark or trade name licenses another to use it in circumstances similar to those here he cannot call upon a court of equity to protect it. *Macmahan Pharmacal Co.* v. *Denver Chemical Mfg. Co.* 113 Fed. 468, 475 (C. C. A. 8). *Everett O. Fisk & Co. Inc.* v. *Fisk Teachers' Agency, Inc.* 3 Fed. (2d) 7 (C. C. A. 8). *Purity Cheese Co.* v. *Frank Ryser Co.* 57 Fed. Sup. 102, 103. This is an application of the clean hands principle. See *Connell* v. *Reed,* 128 Mass. 477; *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218.

It may be that the plaintiff also should be denied relief on the ground that the licenses granted to the defendant operated as an abandonment of the trade mark. That was one of the grounds, if not the principal ground, on which the court rested its decision in the *Fisk* case, cited above. See *Eiseman* v. *Schiffer,* 157 Fed. 473, 476; Nims, Law of Unfair Competition & Trade Marks (3d ed.) §§ 22, 408. But we need not decide that. In view of the conclusion reached questions of evidence argued by the plaintiff have become immaterial and need not be discussed.

*Decree affirmed with costs.*